IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BARTON P. LEVENSON,  )
  )
    Plaintiff )
  )
v. ) 02:12-cv-01749-TFM
  )
CAROLYN W. COLVIN,[1] )
Acting Commissioner of Social Security, )
  )
    Defendant. )

**MEMORANDUM OPINION AND ORDER OF COURT**

December , 2013

**I.   Introduction**

Barton P. Levenson ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final determination of the Commissioner of Social Security ("Commissioner"), which denied his application for disability insurance benefits("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383(f).

**II.   Background**

    **A.   Facts**

Plaintiff was born on May 9, 1960. (R. 35). He is a college graduate with a bachelor's degree in physics and computer programming. (R. 46). He has past relevant work experience as an information associate (classified as semi-skilled, light-exertional work), electronic technical journal developer (classified as semi-skilled, sedentary work), web site developer (classified as

---

    1.    Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 24(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue, as the Defendant in this suit. No further action needs be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

semi-skilled, sedentary work) and computer programmer (classified as skilled, sedentary work). (R. 100).

Plaintiff alleges disability as of May 30, 2009, due to severe fatigue caused by a combination of Crohn's disease, sleep apnea, dysthemia, schizotypal disorder, and depression (R. 33, 34). The record reflects that Plaintiff has not engaged in substantial gainful work activity since his alleged onset date. (R. 50).

Plaintiff first met with David Binion, M.D. on July 14, 2008, with a chief complaint of severe fatigue. (R. 694). Dr. Binion diagnosed Plaintiff with sleep apnea, for which he was later treated with a CPAP device. (R. 695). On October 24, 2008, Plaintiff was examined by David Hall, M.D. and complained about fatigue. (R. 642). During a November 18, 2008 follow-up appointment with Dr. Binion, Plaintiff reported feeling better but was still fatigued. (R. 699). On December 11, 2008, Plaintiff underwent a surgical resection to treat active Crohn's disease and a resulting intestinal fistula. At the time of his discharge, his pain was being treated with medication and managed. (R. 500, 538).

On January 5, 2009, Plaintiff was diagnosed as having Dysthymic Disorder for which he was prescribed Risperidone and Wellbutrin by Dr. Ronald Garbutt. His GAF[2] was rated at 55 and he was diagnosed as having Dysthymic Disorder. (R. 788, 857-859, 855). In July 2009, he was diagnosed by Dr. Garbutt with possible obsessive-compulsive disorder. (R. 849). During a

---

2. A patient's GAF score measures, on a scale of 0-100, the overall effect of his mental health disorder on his ability to function in activities of daily living, as well as socially and occupationally. *See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition-Revised* 34 (4th ed. Text Revision, Am. Psych. Ass'n 2000). A GAF of 41 to 50 is indicative of serious impairment in social, occupational, or school functioning. A GAF of 51 to 60 corresponds to moderate symptoms or moderate difficulty in social, occupational, or school functioning, while a GAF of 61 through 70 suggests mild symptoms or some difficulty in function. *Id*.

follow-up visit in September 2009, he communicated that he was making compulsive 'popping' sounds. (R. 847).

On January 26, 2009, Plaintiff was again examined by Dr. Binion and stated that his abdominal symptoms had ameliorated and Dr. Binion took note of his overall improvement. Dr. Binion concluded that Plaintiff's Crohn's disease was moderate in severity although the fistulating nature of the disease was found to be moderate to severe. (R. 701). During a May 4, 2009 exam, Dr. Binion noted that Plaintiff's GI status was stable and that his Crohn's disease had improved. (R. 707-08).

Dr. Binion composed a letter on May 29, 2009 stating that Plaintiff was suffering from severe fatigue due to the combined effect of his physical and mental ailments and, consequently, would not be able to complete a full workday. (R. 685). On June 30, 2009, Dr. Hall wrote in response to a Sleep Disorder Impairment Questionnaire that Plaintiff should avoid certain work-related functions, such as climbing and heights, using power machines, and frequent operation of motor vehicles. (R. 929). In addition, limitations on Plaintiff's work schedule such as breaks at unpredictable intervals and carrying 25 pounds at a maximum were also suggested. (R. 930). Later, on October 5, 2009, Dr. Hall opined that Plaintiff would not be able to successfully work due to his fatigue. (R. 732).

When Dr. Asim Roy completed a Sleep Disorders Impairment Questionnaire on October 8, 2009, he mentioned that Plaintiff's prognosis was "fair" due to other medical conditions, such as Crohn's disease and depression, which adversely affected his sleep. (R. 803). However, he also believed that Plaintiff would periodically need one to two breaks to rest. (R. 803). On October 12, 2009, Plaintiff had another follow-up visit with Dr. Garbutt and he stated that the compulsive 'popping' sounds had ceased until two days prior to his appointment. (R. 841-845).

3

On October 29, 2009, a physical residual functional capacity (RFC) assessment was conducted by Mary Ellen Wyszomierski, M.D. (R. 881). The RFC detailed Plaintiff's ability to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand/walk for four hours in an eight-hour day, and sit about 6 hours each day. (R. 882). On occasion, Plaintiff had the ability to use stairs and ramps, balance, stoop, kneel, crouch, and crawl. (R. 883). Furthermore, no manipulative, visual, or communicative limitations suffered by Plaintiff were noted in the assessment. (R. 883-84). The RFC also stated that Plaintiff should avoid concentrated exposure to vibrations and moderate exposure to hazards. (R. 884). Plaintiff's Crohn's disease was found to be stable with no ongoing symptoms. (R. 887).

On November 9, 2009, Plaintiff was examined by Linda Rockey, Psy.D., a state agency examining psychologist. (R. 888-889). Dr. Rockey observed that Plaintiff suffered from depression and had a low energy level. (R. 890-891) Plaintiff also described symptoms of paranoia and could only complete five serial digits backward. (R. 891) The Axis I diagnoses were Major Depressive Disorder, history of Schizotypal Disorder, and history of Dysthemia with a GAF index score of 58. (R. 892). However, despite these diagnoses, Dr. Rockey noted that Plaintiff made good eye contact; had normal speech patterns; had coherent, logical, and goal-oriented thoughts; and was overall pleasant and cooperative. His social reasoning skills were found to be only slightly reduced, his memory was intact, he was fully oriented, and he experienced only a small reduction in concentration. Furthermore, Dr. Rockey opined that Plaintiff's ability to understand and remember detailed instructions and to make judgments on simple work-related decisions was only mildly impaired and not significant. Plaintiff was also only moderately impaired in terms of his ability to interact with coworkers and to respond effectively to work-related issues. (R. 895).

On December 11, 2009, an RFC assessment on the basis of Plaintiff's medical records was conducted by John Rohar, Ph.D. (R. 897). Dr. Rohar found that Plaintiff's Major Depressive Disorder, Dysthymia, and Schizotypal Disorder mildly restricted his daily living, moderately affected his social functioning, and created moderate difficulties in his ability to concentrate and work at an acceptable pace. Dr. Rohar also completed a Mental RFC Assessment which evaluated Plaintiff's ability to successfully complete several key work-related functions. Based upon this assessment, Plaintiff was found to experience only moderate difficulties with respect to his ability to understand and respond to instructions, work alongside others, interact effectively with members of the general public, appropriately respond to alterations in work-setting, and make routine workplace decisions. (R. 897-898).

On March 6, 2011, Plaintiff underwent a full psychiatric evaluation by Dr. Julie Garbutt following an incident during which he tried to strangle his mother. This was considered abnormal behavior for him. Plaintiff's mood was sad/anxious and his affect was constricted on a mental status examination and he agreed to have more intensive outpatient care. (R. 1002-1003).

During a March 18, 2011 appointment with therapist James Kania, Plaintiff reported feeling increasingly angry, irritable and impulsive during the previous 3-6 months. Axis I diagnoses were dysthemic disorder and rule out OCD, and Axis II diagnosis was schizotypal personality disorder. In addition, his GAF score was 45—indicative of serious difficulties in occupational or social functioning. (R. 996-998; *DSM-IV-TR* at 34).

On March 29, 2011, Plaintiff met with Mr. Kania and rated his depression at 3/10 and also complained of feelings of worthlessness, concentration difficulties, and fatigue. Dr. Rohar treated Plaintiff on the same day and Plaintiff communicated that he recently helped his mother move. A mental status exam determined that Plaintiff was clean, cooperative, alert; had normal

5

affect; intact memory, attention, and concentration; fair insight and judgment; logical thought form; and was generally in a good mood. His GAF score was 55, which is in the moderate range. (R. 992-995).

At the April 14, 2011 hearing before the ALJ, Plaintiff testified that he is disabled as a result of fatigue caused by sleep apnea, Crohn's disease, and dysthemia. He stated that he falls asleep 1-3 times per day even after receiving a full night's sleep and that he has lost jobs due to sleep-related issues. (R. 46-47, 53-54). Plaintiff also shared his concern with his lack of caution while driving. (R. 52-53, 59). Furthermore, Plaintiff claimed that he sometimes has trouble concentrating and usually feels overwhelmed. He also stated that he often utilizes the bathroom between 2 and 8 times a day. (R. 60).

### B. **Procedural History**

Plaintiff initially filed an application for DIB on July 20, 2009, in which he claimed total disability since May 30, 2009. (R. 157-160). An administrative hearing was held on April 14, 2011 before Administrative Law Judge Alma de Leon. Plaintiff was represented by counsel and testified at the hearing. Mary Beth Kopar, an impartial vocational expert ("VE"), testified at the hearing that Plaintiff could not perform his past work but would be able to succeed at light unskilled jobs such as (1) ticket seller; (2) order caller; and (3) marker. (R. 35-36). The ALJ determined that Plaintiff would be able to adequately perform duties commensurate with a reduced range of light work with certain functional limitations, such as not dealing directly with the public and having only minimal interaction with peers and supervisors. (R. 30).

On July 5, 2011, the ALJ rendered an unfavorable decision to Plaintiff in which she found that Plaintiff retained the ability to perform a wide range of light exertional activity and, therefore, was not "disabled" within the meaning of the Act. (R. 35-37). The ALJ's decision became the final decision of the Commissioner on October 4, 2012, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. (R. 21, 232-240, 1-5).

On May 28, 2011, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment. Plaintiff contends that the ALJ erred in finding that he retained the residual functional capacity ("RFC") to perform a range of light work. The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence. The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

**III. Legal Analysis**

A. <u>Standard of Review</u>

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Commissioner of Social Security*, 625 F.3d 798 (3d Cir. 2010).

7

When resolving the issue of whether an adult claimant is disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Newell v. Commissioner of Social Security*, 347 F.3d 541, 545-46 (3d Cir. 2003) (*quoting Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari,* 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

(1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell,* 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell,* 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or

her former job. *Newell,* 347 F.3d at 545-46; *Jones,* 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell,* 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity"). In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the 5th step of the sequential evaluation process. In making this determination, the ALJ concluded that the claimant's subjective complaints were not as severe or limiting as alleged and would not prevent him from performing light work with certain restrictions on a continuous basis. The ALJ also concluded that that the record did not demonstrate that Plaintiff's conditions were disabling for a twelve-month period.

### B. Discussion

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3rd Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The

Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

In his motion for summary judgment, Plaintiff claims that the ALJ committed two (2) errors. First, he contends that the ALJ failed to properly evaluate the medical evidence in determining Plaintiff's residual functional capacity. Second, he argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints. Pl.'s Br. in Supp. of Mot. for Summ. J. at 12-18 (ECF No. 10). The Commissioner, for her part, argues that the ALJ properly weighed all of the medical evidence of record, as well as Plaintiff's description of his symptoms, and the ALJ's decision is therefore supported by substantial evidence. Def.'s Br. in Supp. of Mot. for Summ. J. at 12-18 (ECF No. 10). The Court will address Plaintiff's contentions *seriatim*.

1. *The ALJ Properly Evaluated the Medical Evidence.*

Plaintiff first argues that the ALJ failed to properly evaluate the medical evidence in determining his residual functional capacity. In her decision, the ALJ considered the Plaintiff's medical records as well as the opinions of his doctors. (R. 27-28). The ALJ found that the evidence of record did not support the doctors' opinions, and thus, she discounted them. (R. 32). The Court finds that the ALJ's treatment of the doctors' opinions in determining Plaintiff's residual functional capacity was proper.

It is well settled that an ALJ must accord a treating source's opinions "great weight, especially when [they] reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d at 422, 429 (3d Cir. 1999) (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987). However, the ultimate decision of whether a person is eligible for DIB is a question of law, and if the Commissioner's

decision is supported by substantial evidence, then such a decision must be sustained. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's decision indicates that she identified substantial evidence in the record to support the Commissioner's decision despite the opinions of Plaintiff's treating physicians.

That is not to say that the opinions of the doctors were not entitled to any consideration by the ALJ. *See* SSR 06-03P, 2006 WL 2329939. The Social Security Administration ("SSA") has explained that evidence from "medical sources…should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. In evaluating evidence from medical sources, the ALJ must consider the following factors:

- how long the source has known and how frequently the source has seen the individual;

- how consistent the opinion is with other evidence;

- how well the source explains the opinion;

- whether the source has a specialty or area of expertise related to the individual's impairment(s); and

- any other factors that tend to support or refute the opinion.

*Id.* at *4-5 (citing 20 C.F.R. § 404.1527(d)).

In this case, the ALJ properly applied those factors in deciding that Plaintiff's treating doctors' opinions were against the weight of the underlying medical evidence. As the ALJ concluded, there was no objective basis for justifying the opinions of Plaintiff's medical doctors that Plaintiff lacks an ability to perform all work activity, especially during any 12-month period. (R. 35). Plaintiff has demonstrated that he regularly performs work around the house, does laundry and shopping, drives his wife to work, and attends church. (R. 29, 198). All of these

activities require repeated interpersonal contact and, even if Plaintiff cannot perform work with the general public, there are several jobs in the national economy that do not require such contact and require no more than minimal contact with peers and supervisors. Dr. Hall even stated that Plaintiff is capable of moderate stress work. (R. 806, 930). As far as his sleep disorder is concerned, the ALJ found substantial evidence that his sleep apnea is under control with the use of the CPAP device. (R. 32). Dr. Binion opined that Plaintiff requires a mid-day nap even after receiving 7 hours of sleep at night, but this opinion is countered by the results of a mental status examination which showed Plaintiff to be alert, oriented, and cooperative as opposed to fatigued and lethargic. (R. 994). In addition, the residual functional capacity adopted by the ALJ accounted for the need for breaks during the day. (R. 33). The mental status examination provided substantial evidence that Plaintiff is capable of mentally functioning at a level required by jobs in the national economy. (R. 994-995).

With respect to Plaintiff's Crohn's disease, Plaintiff has been afflicted with the disease since 1982 and has successfully performed at jobs for years despite the disease. (R. 31). Although he had experienced a flare-up in 2008, Plaintiff had an ileocolonic resection to treat it shortly thereafter and has been doing well since then (as noted in a December 2010 visit by Dr. Binion). (R. 500, 538). Plaintiff testified that he has not had any recent abdominal pain and acknowledged that his medications were effective. (R. 29).

The mental status examination conducted by Dr. Rockey indicated that Plaintiff was pleasantly cooperative and was able to remember and carry out short, simple instructions. (R. 888-895). The results of Dr. Rockey's examination of Plaintiff are consistent with an individual capable of performing jobs compatible with his RFC. Even though Plaintiff exhibited signs of anger and depression in September 2007, these conditions have been exhibited by Plaintiff dating

back to childhood and Plaintiff had successfully performed at jobs during this time period. (R. 31). In sum, the medical record provides substantive evidence for the ALJ's decision to not accept the treating physicians' opinions.

2. *The ALJ Properly Evaluated Plaintiff's Subjective Complaints*

The ALJ is the fact-finder in a social security case and she, rather than the Court, was present at the hearing and is able to evaluate Plaintiff's demeanor and testimony. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although the Court can read the transcript of the hearing and has access to the Record, the subjective nature of Plaintiff's testimony and the non-verbal actions of Plaintiff during the hearing can only be evaluated by the ALJ. As a result, significant weight is granted to the ALJ with respect to his findings regarding Plaintiff's credibility. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

The ALJ properly evaluated Plaintiff's statements in light of the objective medical evidence to arrive at her conclusions regarding Plaintiff's having overstated his symptoms. Although Plaintiff claimed to need breaks every 15-20 minutes and to use the restroom two to eight times a day, there is substantial medical evidence that Plaintiff's GI problems were under control with both surgery and medication. (R. 29). In addition, functional assessments indicated that Plaintiff had the ability to work at jobs within his RFC not only due to past employment while experiencing GI ailments, but also as evidenced by his daily activities and functions. (R. 29, 198). In addition, some of Plaintiff's own statements as well as the results of the mental status examination indicate that his description of his mental conditions and their severity was overstated. (R. 858, 890).

Plaintiff stated that he is disabled and unable to work, but the ALJ determined, after evaluating all of the medical evidence in addition to Plaintiff's testimony, that he is capable of

13

working at jobs within the limitations of the RFC. (R. 33-35). Plaintiff never addressed the specific jobs delineated by the vocational expert or explained why he would not be able to succeed at those jobs. The Court acknowledges that Plaintiff's medical conditions would prevent him from working at several jobs in the national economy, but to conclude that Plaintiff is incapable of succeeding at "any" job, much less those commensurate with his RFC is simply too broad and incorrect. Substantial evidence exists to support the ALJ's determination that Plaintiff can indeed function adequately at jobs within his RFC.

**IV.     Conclusion**

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and her conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that Mr. Levenson is able to perform a limited range of work at the light exertional level.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARTON P. LEVENSON, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 02:12-cv-01749-TFM |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER OF COURT**

**AND NOW**, this 16th day of December, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment (ECF No. 10) filed by Carolyn W. Colvin, Acting Commissioner of Social Security is **GRANTED**;

2. The Motion for Summary Judgment (ECF No. 8) filed by Plaintiff, Barton P. Levenson, is **DENIED**; and

3. The Clerk will docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: **Beth Arnold, Esquire**
Email: pressenda@aol.com
**Amy Joseph Coles, Esquire**
Email: amjoseph@duanemorris.com
**Colin Callahan, Esquire**
Email: colin.callahan@usdoj.gov